**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CELEBRITY SMILES WESTMONT, PLLC individually and as the representatives of a class of similarly situated persons and entities, | Case No. 1:20-cv-05061 |
| Plaintiff, | |
| v. | |
| PAUL MITCHELL d/b/a A-1 FLAT ROOF MASTERS, | **JURY DEMANDED** |
| Defendant. | |

## <u>FIRST AMENDED CLASS ACTION COMPLAINT</u>

NOW COMES the Plaintiff, CELEBRITY SMILES WESTMONT, PLLC ("Plaintiff"), by and through its undersigned attorney, and asserts this Class Action Complaint pursuant to the Telephone Consumer Protection Act of 1991, 47 USC §227, *et seq*. (at times the "TCPA") and Federal Rule of Civil Procedure 23(a) and 23(b)(3):

### I. Parties, Jurisdiction and Venue

1.      Plaintiff is an Illinois corporation, located in Westmont, Illinois.

2.      Plaintiff maintains a telephone number, (630) 971-0072 (the "Facsimile Number"), which is connected to a device that utilizes hardware and software to allow the device to receive, store and print facsimiles (the "Facsimile Machine").

3.      The Facsimile Machine is located within this District.

4.      Defendant PAUL MITCHELL d/b/a A-1 FLAT ROOF MASTERS ("Defendant") offers different types of repair services.

5.      Defendant is a citizen of the State of Illinois.

6.      Defendant's principal place of business is located at 4803 N. Neenah Ave., Chicago, Illinois 60706

7.      Defendant resides at 5834 W. Foster Ave., Apt. 1, Chicago, Illinois 60630.

8.      This Court has personal jurisdiction over Defendant because it transacted business within this judicial district through its action of sending an unsolicited advertisement to Plaintiff and over forty unsolicited advertisements facsimile transmission to telephone facsimile machines located within the State of Illinois, and in particular, this judicial district.

9.      Defendant has also committed tortious acts within this judicial district by and through the transmission of unsolicited facsimile advertisements to Plaintiff, and upon information and belief, other similar transmissions of unsolicited advertising facsimiles to persons located within this judicial district.

10.     Venue is proper because the subject facsimiles were sent to and received within this judicial district.

11.     Supplemental jurisdiction exists for Plaintiff's state law claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*.

**II.  Summary Of The TCPA**

12.     The TCPA makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. §227(b)(1)(C).

13.     "The term 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. §227(a)(5).

14.     "The term 'telephone facsimile machine' means equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. §227(a)(3).

15.     The prohibitions of TCPA is not limited to unsolicited facsimiles that are sent to "conventional stand-alone telephone facsimile machine."

16.     According to the FCC's 2003 TCPA Report and Order, unsolicited advertising facsimiles

sent to computer based facsimile receipt and delivery systems are prohibited by the TCPA:

> We conclude that faxes sent to personal computers equipped with, or attached to, modems and to computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes . . . . The record confirms that a conventional stand-alone telephone facsimile machine is just one device used for this purpose; that developing technologies permit one to send and receive facsimile messages in a myriad of ways. Today, a modem attached to a personal computer allows one to transmit and receive electronic documents as faxes. "Fax servers" enable multiple desktops to send and receive faxes from the same or shared telephony lines.

> The TCPA's definition of "telephone facsimile machine" broadly applies to any equipment that has the capacity to send or receive text or images. The purpose of the requirement that a "telephone facsimile machine" have the "capacity to transcribe text or images" is to ensure that the prohibition on unsolicited faxing not be circumvented. Congress could not have intended to allow easy circumvention of its prohibition when faxes are (intentionally or not) transmitted to personal computers and fax servers, rather than to traditional stand-alone facsimile machines.

17.     Unsolicited facsimiles prevent facsimiles machines and computers from receiving authorized facsimiles, prevent their use for authorized outgoing facsimiles, cause undue wear and tear on the recipients' telefax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited advertising message.

18.     Pursuant to the TCPA, the person or entity sending an advertising facsimile bears the burden of proof as to whether it had permission of the facsimile recipient to send an unsolicited facsimile advertisement. 47 U.S.C. §227(b)(1)(C)(i).

19.     One way a sending party can demonstrate permission is through demonstrating an established business relationship (an "EBR") with the receiving party.

20.     The burden of proving EBR is on the party that sends a facsimile as explained by FCC's Report and Order and Third Order on Reconsideration (the "2006 FCC Order").

> 12.  To ensure that the EBR exemption is not exploited, we conclude that an entity that sends a facsimile advertisement on the basis of an EBR should be responsible for demonstrating the existence of the EBR. The entity sending the fax is in the best position to have records kept in the usual course of business showing an EBR, such as purchase agreements, sales slips, applications and inquiry records. We emphasize that we are

not requiring any specific records be kept by facsimile senders. Should a question arise, however, as to the validity of an EBR, the burden will be on the sender to show that it has a valid EBR with the recipient.

\* \* \*

14.  In the event a recipient complains that its facsimile number was not provided to the sender, the burden rests with the sender to demonstrate that the number was communicated in the context of the EBR.

15.  . . . We also reiterate that senders of facsimile advertisements must have an EBR with the recipient in order to send the advertisement to the recipient's facsimile number. The fact that the facsimile number was made available in a directory, advertisement or website does not alone entitle a person to send a facsimile advertisement to that number.

*See*, https://apps.fcc.gov/edocs_public/attachmatch/FCC-06-42A1.pdf.

21.     "Absent a clear expression of Congressional intent to apply  another standard, the Court must presume that Congress intended to apply the traditional standards of vicarious liability with which it is presumed to be familiar, including the alter ego and agency doctrines." *Thomas v. Taco Bell Corp.,* 879 F. Supp.2d 1079, 1084 (C.D. Cal. 2012).

**III.   The Subject Facsimile**

22.     On August 26, 2020, Defendant transmitted (or caused to be transmitted)  an unsolicited facsimile advertisement to Plaintiff's Facsimile Number (the "Subject Facsimile"). Subject Facsimile is depicted below.



23.     The Subject Facsimile was sent by Defendant without Plaintiff's prior express invitation or permission, in writing or otherwise.

24.     The Subject Facsimile promotes residential, industrial, and commercial availability of different repair services.

25.     The Subject Facsimile states in part: "We will beat any competitor written estimate." and lists the following number "(708) 779-8685."

26.     The Subject Facsimile is an "unsolicited advertisement" as defined by 47U.S.C. §227(a)(5) based upon is promotion and offer of varies repair services to Plaintiff and other similarly situated persons.

27.     Defendant promoted repair services through the composition of and sending of similar unsolicited advertisements to consumers in this State.

28.     As set forth above, Defendant sent the Subject Facsimile to Plaintiff's Facsimile Number

for its financial benefit.

29. Defendant would have obtained a financial benefit if Plaintiff accepted one or more of the proposed offers through Defendant that was promoted on the Subject Facsimile as a result of Plaintiff calling the telephone number identified on the Subject Facsimile.

30. Upon information and belief, the telephone number on the Subject Facsimile, 708-779-8685, is registered and/or affiliated with Defendant.

31. Defendant knew of and authorized the transmission of the Subject Facsimile.

32. Plaintiff did not consent to, request or otherwise solicit the Subject Facsimile.

33. The sending of the Subject Facsimile by Defendant violated the TCPA.

34. The Subject Facsimile is representative of Defendant's unlawful conduct towards other Illinois based recipients of identical or similar *unsolicit*ed facsimiles.

35. Accordingly, on behalf of itself and all others similarly situated, Plaintiff brings this civil action to certify a class of persons and entities who were sent facsimile advertisements, by Defendant, without their prior express invitation or permission.

36. The Subject Facsimile, by offering repair services, was and is an "unsolicited advertisement" as defined by 47 U.S.C. §227(a)(5) because the Subject Facsimile advertised and promoted the commercial availability of property, goods and/or services.

37. As set forth above, Defendant sent the Subject Facsimile to Plaintiff's Facsimile Number for its financial benefit.

38. The Subject Facsimile was sent to Plaintiff without Plaintiff's "prior express invitation or permission, in writing or otherwise." 47 U.S.C. §227(a)(5).

39. To the best of Plaintiff's knowledge, information and belief, Defendant has or had no prior established business relationship with Plaintiff.

40. Plaintiff's receipt of the Subject Facsimile caused Plaintiff to suffer concrete and actual harm. For example, Plaintiff, as recipient of the Subject Facsimile, temporarily lost the use of its Facsimile Machine and its paper, ink and toner for a period of time.

41.     Further, receiving, viewing and printing the Subject Facsimile wasted the Plaintiff's valuable time and the time of one of its employees. The time wasted to review the Subject Facsimile could have been spent on something else.

42.     The transmission of the Subject Facsimile interrupted and disturbed Plaintiff's right of privacy and right to not be disturbed with unsolicited advertising facsimiles.

43.     The transmission of the Subject Facsimile to Plaintiff's Facsimile Number tied up Plaintiff's Facsimile Number, caused Plaintiff's Facsimile Machine to use data, resulted in the unnecessary use of computer storage space and unauthorized usage of the Facsimile Machine's software and hardware.

44.     Contacting the sender of an unsolicited facsimile for the purpose of telling the sending party to stop sending unsolicited facsimiles wastes the time of the recipient.

**IV.   Statutory Damages**

45.     The TCPA authorizes an aggrieved person to be awarded statutory damages of $500 for each unlawful facsimile. 47 U.S.C. § 227(b).

46.     The TCPA allows a court "in its discretion" to increase the award up to a maximum of treble damages where a defendant "willfully or knowingly violated" the statute. 47 U.S.C. § 227(b)(3). "Willfully" and "knowingly" are not defined by any specific section of the TCPA.

47.     The Communications Act of 1943, which contains the TCPA, defines acting "willfully" as a voluntary act, but does not require knowledge that the act violates the statute. The terms "willfully" or "knowingly" simply require that the actions of Defendant to be intentional or volitional, as opposed to accidental or inadvertent. Plaintiff is not required to demonstrate that Defendant must have known that the conduct would violate the statute. *See Sengenberger v. Credit Control Services, Inc.*, 2010 U.S. Dist. LEXIS 43874, 2010 WL 1791270, at *6 (N.D. Ill. May 5, 2010), [*22] adhered to on reconsideration, No. 09 C 2796, 2010 U.S. Dist. LEXIS 142528, 2010 WL 6373008 (N.D. Ill. June 17, 2010).

48.     The plain language of 47 U.S.C. § 227(b) makes the sender of an unauthorized commercial facsimile strictly liable, so interpreting "willfully" as requiring a volitional act.

49.     Plaintiff "need not prove that defendant had knowledge of the TCPA's provisions in order

to establish that the defendant willfully or knowingly violated the TCPA." *Stewart v. Regent Asset Mgmt. Solutions*, 2011 U.S. Dist. LEXIS 50046, 2011 WL 1766018, at *2 (N.D. Ga. May 4, 2011) (citing *Charvat v. Ryan*, 116 Ohio St. 3d 394, 2007-Ohio-6833, 879 N.E.2d 765, 770).

**V.    Vicarious Liability for Violations of the TCPA**

50.    As a "seller" of "unsolicited advertisements," Defendant can be vicariously liable for utilizing other third-parties to send unsolicited advertising facsimiles to Plaintiff and other persons.

51.    Vicarious liability and agency principles apply under the TCPA to hold a party responsible and liable for TCPA violations committed by a third-party vendor. For example, in *Gomez v. Campbell-Ewald Co.,* 768 F.3d 871 (9th Cir. 2014), the plaintiff alleged that the defendant, Campbell-Ewald Company ("Campbell"), had instructed or allowed a third-party vendor to send unsolicited text messages on behalf of the United States Navy –- with whom Campbell-Ewald had a marketing contract. *Gomez*, 768 F.3d at 873. Campbell argued that it could not be held liable for the alleged TCPA violations since it had outsourced the dialing and did not actually make any calls on behalf of its client. Id. at 877. The Ninth Circuit rejected this argument and ruled that the TCPA allowed for vicarious liability. *Id.* at 878-79 (a "defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller.").

52.    Defendant is vicariously liable for any violations of the TCPA caused by any third-parties because, on information and belief, Defendant compensated any third-party if a person receiving the Subject Facsimile accepted health insurance through Defendant.

**VI.    Causes of Action**

**COUNT I – Individual Claim vs. Defendant for Violations of the TCPA**

53.    Plaintiff incorporate the above paragraphs as if fully set forth.

54.    The Subject Facsimile was an unsolicited advertisement as contemplated by the TCPA.

55.    The TCPA provides a private right of action to bring this action on behalf of Plaintiff. 47 U.S.C. §227(b)(3).

56.    Defendant violated the TCPA and the regulations promulgated thereunder by sending the

Subject Facsimile to Plaintiff without Plaintiff's permission and without a valid EBR.

57.     Defendant intentionally sent the Subject Facsimiles to Plaintiff.

58.     Defendant intentionally violated the TCPA by sending or causing the Subject Facsimile

to be sent to Plaintiff without Plaintiff's permission and without a valid EBR.

WHEREFORE, Plaintiff, in its individual capacity, demands judgment in its favor and against

Defendant as follows:

a.     award Plaintiff up to $1,500 for Defendant's violation of the TCPA of
       sending it junk facsimiles without its consent and/or without an EBR;

b.     enjoin Defendant from additional violations of the TCPA; and

c.     award pre-judgment interest, costs, and such further relief as the Court
       may deem just and proper.

## VII.    Class Action Allegations

59.     Plaintiff incorporates Sections I through II as if fully set forth above.

60.     Common questions of law and fact apply to the claims of all class members. The common

material questions of fact and law include, but are not limited to, the following:

a.     Whether Defendant sent the unsolicited fax advertisements;

b.     Whether the facsimiles advertised the commercial availability or quality
       of property, goods, or services;

c.     The manner and method Defendant used to compile or obtain the list of
       fax numbers to which it sent the Subject Facsimiles:

d.     Whether Defendant faxed advertisements without first obtaining the
       recipients' prior invitation or permission;

e.     Whether Defendant violated the provisions of 47 U.S.C. §227 and the
       regulations promulgated thereunder;

f.     Whether Defendant should be enjoined from faxing advertisements in the
       future;

g.     Whether Plaintiff and the other members of the class are entitled to
       statutory damages; and

h.     Whether the Court should award treble damages.

61.     Plaintiff's claims are typical of the claims of all class members.

62.     Plaintiff and other members of the class received the same or similar facsimiles as the facsimiles sent by or on behalf of Defendant advertising products, goods and/ or services of Defendant during the Class Period.

63.     Defendant has acted in the same or in a similar manner with respect to Plaintiff and all the class members by sending Plaintiff and each member of the class the same or similar facsimiles, which were sent without prior express invitation or permission.

64.     Plaintiff is making the same claims and seeking the same relief for itself and all class members based upon the same federal statute.

65.     Plaintiff will adequately represent and protect the interests of the class and has no interest that conflict with absent class members.

66.     Plaintiff's counsel is an experienced consumer class action litigator.

67.     Class certification is appropriate because the prosecution of individual actions by class members would: (a) create the risk of inconsistent adjudications that could establish incompatible standards of conduct for Defendant, and/or (b) as a practical matter, adjudication of the Plaintiff's claims will be dispositive of the interests of class members who are not parties.

68.     Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

      a.  The evidence of the absence of consent relative to putative class members will result in the fair and efficient adjudication of class members' claims without the need for separate or individualized proceedings;

      b.  Evidence regarding defenses or any exceptions to liability that Defendant may assert and attempt to prove will come from business records and will not require individualized or separate inquiries or proceedings;

    c.   Defendant has acted and is continuing to act pursuant to common policies or practices in the same or similar manner with respect to all class members;

    d.   The amount likely to be recovered by individual class members does not support individual litigation;

    e.   A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs;

    f.   This case is inherently manageable as a class action in that Defendant:

        (i)  specifically targeted persons (both businesses and individuals) to receive unsolicited facsimile transmissions;

        (ii) purchased a list of advertising leads from a third party;

    g.   This case is inherently manageable as a class action in that Defendant:

        (i)  business records from Defendant will readily identify class members and establish liability and damages;
        (ii) business records from one or more third-parties will readily identify class members and establish liability and damages;

    h.   Liability and damages can be established for the Plaintiff and the class with the same common proofs because statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner;

    i.   A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort and expense;

    j.   A class action will contribute to uniformity of decisions concerning the actions taken by Defendant; and

    k.   the claims of the class are likely to go unaddressed absent class certification.

69.    More than forty (40) Illinois companies or persons in the State of Illinois received the Subject Facsimile or something similar to the Subject Facsimile without their consent and were harmed in a similar manner as alleged above by Plaintiff.

70.    Upon information and belief, because unsolicited facsimiles are generally sent out *en masse*, and because Plaintiff did not consent to receive the Subject Facsimiles, it is plausible to allege that Defendant has individually or collectively sent, and continue to send, dozens, and up to hundreds of similar

unsolicited advertisements via facsimile in violation of the TCPA.

71.     The TCPA provides a private right of action to bring this action on behalf of Plaintiff and the putative class members to redress Defendant's violations of the Act and provides for statutory damages. 47 U.S.C. §227(b)(3).

72.     Plaintiff intends to certify a class which includes the Subject Facsimile and all other similar unsolicited advertising facsimiles sent during the four years prior to the filing of this civil action through the present.

73.     The unlawful sending of the Subject Facsimile and other similar unsolicited facsimiles to Plaintiff and other putative class members caused Plaintiff and the putative class members to suffer damages.

74.     The unlawful sending of the Subject Facsimile to Plaintiff and the unlawful sending of other similar unsolicited facsimiles to class members caused Plaintiff and the recipients to use and waste paper and toner when they printed the subject facsimiles.

75.     The unlawful sending of the Subject Facsimile to Plaintiff and the unlawful sending of other similar unsolicited facsimiles to class members occupied and/or depleted their telephone lines, data lines, computer storage related to the operation of their facsimile machines.

76.     The unlawful sending of the Subject Facsimile to Plaintiff and the unlawful sending of other similar unsolicited facsimiles to class members caused Plaintiff and the class members and/or their employees to waste time receiving, reviewing and routing the unsolicited and unlawful facsimiles.

77.     This wasted time could have been spent on the Plaintiff's and the other class members' business activities.

78.     Just like with Plaintiff, Defendant cannot demonstrate that it had the consent of the recipients of each facsimile advertisement.

79.     The unlawful sending of the Subject Facsimile to Plaintiff and the unlawful sending of other similar unsolicited facsimiles to class members interrupted the Plaintiff's and other class members' privacy interests in being left alone and free from unsolicited "junk" facsimiles.

**COUNT II – Class Action Based Claims vs. Defendant**

80.     Plaintiff incorporate the above paragraphs as if fully set forth.

81.     Defendant violated the TCPA and the regulations promulgated thereunder by sending the Subject Facsimile to over forty putative class members without the permission of the putative class members and/or without a valid EBRs.

82.     Defendant intentionally violated the TCPA by sending or causing the Subject Facsimile to be sent without the permission of the putative class members and/or without a valid EBRs.

83.     In accordance with FRCP 23(b)(1), (b)(2) and (b)(3), Plaintiff brings this class action pursuant to the TCPA, on behalf of the following class of persons:

> All persons in the United States who (1) four years prior to the filing of this action, (2) were sent facsimiles advertising repair services like the one attached to this Notice (attaching the Subject Fax).

84.     Since Defendant has the burden of proof of demonstrating consent, it is free to assert that it had obtained "prior express invitation or permission" to send fax advertisements or that it has or had an established business relationship with proposed class members.

85.     Alternatively, Plaintiff intends the above class to include everyone who received similar variations of unsolicited facsimile advertisement.

86.     Alternatively, Plaintiff brings this class action pursuant to the TCPA, on behalf of the following class of persons:

> All persons located in the State of Illinois who (1) four years prior to the filing of this action, (2) were sent facsimiles of advertising repair services like the one attached to this Notice (attaching the Subject Fax).

WHEREFORE, Plaintiff, on behalf of the above defined class members, demands judgment in its favor and against Defendant:

> a.  award class members up to $1,500 for Defendant's "willful or knowing" violations of the TCPA ;
>
> b.  enjoin Defendant from additional violations of the TCPA; and
>
> c.  award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

**COUNT III – Class Action Claim Pursuant to the Illinois Consumer Fraud Act**

87.     As alleged above, Defendant is and was engaged in commerce in the State of Illinois with regard to Plaintiff.

88.     Defendant violated Illinois Consumer Fraud Act, 815 ILCS 505/1, *et seq*., by sending or causing the Subject Facsimile to be sent to Plaintiff and other Class Members.

89.     The Facsimiles are "advertisement[s]" as the term is defined by Section 505/1(a) of the ICFA.

90.     Plaintiff is a "person" as defined by Section 505/1(c) of the ICFA.

91.     Defendant treated Plaintiff as a "consumer" as this term is defined by Section 505/1(e) of the ICFA because it sought to solicit Plaintiff for what was being advertised on the Subject Facsimile.

92.     The Subject Facsimiles is an "advertisement" as this term is defined by Section 505/1(a) of the ICFA.

93.     According to Section 505/1(a) of the ICFA:

> The term "advertisement" includes the attempt by publication, dissemination, solicitation or circulation to induce directly or indirectly any person to enter into any obligation or acquire any title or interest in any merchandise and includes every work device to disguise any form of business solicitation by using such terms as "renewal", "invoice", "bill", "statement", or "reminder", to create an impression of existing obligation when there is none, or other language to mislead any person in relation to any sought after commercial transaction.

94.     The Subject Facsimiles are a form of a "sale" as this term is defined by Section 505/1(d) of the ICFA.

95.     According to Section 505/1(d) of the ICFA, "[t]he term "sale" includes any sale, offer for sale, or attempt to sell any merchandise for cash or on credit."

96.     The Subject Facsimile was a form of "trade" and/or "commerce" as these terms are defined by Section 505/1(f) of the ICFA.

97.     According to Section 505/1(f) of the ICFA:

> The terms "trade" and "commerce" mean the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or

thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State.

98.     The ICFA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices."

99.     In relevant part, Section 505/2 states as follows:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" . . . in the conduct of any trade or commerce. . . .

100.     As alleged above and detailed below, Defendant violated Section 505/10a(a) of the ICFA.

101.     Plaintiff did not consent to receiving the Subject Facsimile.

102.     As set forth above, Defendant violated ICFA by transmitting the Subject Facsimile without Plaintiff's consent.

103.     As set forth above, Defendant intentionally sent the Subject Facsimiles, and the sending of the Subject Facsimiles constitutes an unfair or deceptive act or practice "in the course of conduct involving trade or commerce."

104.     Plaintiff suffered tangible damages as a result of receiving the Subject Facsimile in the form of wasted toner and paper, wear and tear of the subject facsimile machine, and time wasted in terms of having to look at, print and dismiss the Subject Facsimile for what it is – unsolicited junk.

105.     Sending unsolicited facsimiles offends public policy. Not only is the sending of unsolicited facsimiles unlawful under the TCPA, it is a misdemeanor criminal offense under Illinois law. *See* 720 ILCS 5/26-3.

106.     Sending unsolicited facsimiles is oppressive because unsolicited facsimiles impose a lack of meaningful choice and/or an unreasonable burden upon recipients.

107.     A practice of sending unsolicited faxes does deprive consumers of choice, given that they cannot avoid such faxes without turning off their fax machines.

108.    Costs associated with receiving, reviewing and printing that are imposed on an unwilling consumer constitutes a real and substantial injury.

109.    Because unsolicited facsimiles are generally sent out *en masse*, and because Plaintiff did not consent to receive the Subject Facsimile, it is plausible to allege that Defendant has sent, and continues to send, dozens, and up to hundreds of similar unsolicited advertisements via facsimile in violation of ICFA.

110.    On information and belief, more than forty (40) Illinois companies or persons in the State of Illinois received similar unsolicited facsimiles as the Subject Facsimile without their consent and were harmed in a similar manner as alleged above by Plaintiff.

111.    As alleged above, unsolicited faxes impose costs on unwilling consumers, by wasting paper and toner, wearing down fax machines, and consuming employee time.

112.    On information and belief, Defendant has sent at least three dozen similar unsolicited facsimiles to people and/or business entities in Illinois.

113.    Defendant's practice of sending unsolicited facsimiles has violated Illinois public policy, deprived persons and businesses of the choice to not receive advertising faxes, and caused a significant amount of harm to consumers, taken in the aggregate.

114.    Accordingly, the Complaint plausibly suggests that the aggregate harm caused by this practice would constitute substantial harm and thus unfair within the meaning of the ICFA.

WHEREFORE, Plaintiff, in his individual capacity, demands judgment in its favor and against all Defendant, as follows:

      a.    award Plaintiff and the class members an amount to be determined to reimburse Plaintiff and the class members for the amount of harm caused by Defendant's violations of ICFA;

      b.    award punitive damages;

      c.    award attorney's fees and costs pursuant to ILCS 505/10a(c);

      d.    declare that Defendant vicariously liable for the conduct of and third-party;

      e.    enjoin Defendant from additional violations of ICFA; and

    f.   that the Court award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

**Plaintiff hereby demands a jury trial.**

              Respectfully submitted,

              Plaintiff CELEBRITY SMILES WESTMONT, PLLC, individually, and as the representatives of a class of similarly situated persons

s/ Nathan C. Volheim
Nathan C. Volheim, Esq. #6302103
Counsel for Plaintiff
Admitted in the Northern District of Illinois
Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200
Lombard, Illinois 60148
(630) 568-3056 (phone)
(630) 575-8188 (fax)
nvolheim@sulaimanlaw.com